UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Allen J., | Case No. 18-cv-810 (ECT/SER) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Nancy Berryhill, *Acting Commissioner of Social Security*, | |
| Defendant. | |

Stephanie M. Balmer, 1200 Alworth Building, 306 West Superior Street, Duluth MN 55802 (for Plaintiff); and

Elvi D. Jenkins, Assistant Regional Counsel, Social Security Administration, 1301 Young Street, Suite A702, Dallas TX 75202 (for Defendant).

## I.   INTRODUCTION

Plaintiff Allen J. brings the present action, contesting Defendant Commissioner of Social Security's denial of his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–34, and supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381. The parties filed cross-motions for summary judgment, which were referred to the undersigned for a report and recommendation to the district court, the Honorable Eric C. Tostrud, United States District Judge for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 7.2 and 72.1. For the reasons set forth below, this Court recommends denying Plaintiff's motion and granting Defendant's motion.

1

## II. BACKGROUND

### A. Procedural History

Plaintiff filed the instant action for DIB and SSI in March 2015, alleging a disability onset date of October 8, 2013. Plaintiff alleges impairments of: injuries resulting from semi accident; lower back pain; chronic pain in back, legs, and neck; chronic headaches; depression; memory loss; short term memory; subdural hematoma; facial fracture; and facial pain. Plaintiff was found not disabled and that finding was affirmed upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge. A hearing was held and, on March 30, 2017, the ALJ issued a decision denying Plaintiff's claim for benefits. Plaintiff sought review of the ALJ's decision through the Appeals Council, which denied review. Plaintiff then sought review in this Court.

### B. The ALJ's Decision

The ALJ found Plaintiff had the severe impairments of: lumbar spondylosis with mild disc narrowing; an orbital zygomatic fracture status post repair; closed head injury; subdural hematoma; and right tibial fracture with ORF. (Tr. 18). The ALJ next concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listing in 20 C.F.R. pt. 404, subpt. P, app. 1. (Tr. 19). The ALJ looked at Listing 1.04 (disorders of the spine) and, with respect to Plaintiff's right tibial fracture, Listings 1.02, 1.03, and 1.06. (Tr. 19). The ALJ determined Plaintiff has the residual functioning capacity ("RFC") to "perform light work . . . which does not require more than occasional bending, stooping, crouching, or climbing; no kneeling or

crawling; no work at unprotected heights or near hazards; and which is routine, repetitive simple work." (Tr. 20). The ALJ determined Plaintiff is not capable of performing his past work, but there are jobs in the national economy that he could perform. (Tr. 25–26). Accordingly, Plaintiff was found not disabled from October 8, 2013 through the date of the ALJ's decision. (Tr. 26).

## III. ANALYSIS

### A. Legal Standard

Disability benefits are available to individuals determined disabled. 42 U.S.C. §§ 423(a)(1), 1381a; *accord* 20 C.F.R. §§ 404.315, 416.901. An individual is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a). This standard is met when a severe physical or mental impairment, or impairments, renders the individual unable to do his previous work or "any other kind of substantial gainful work which exists in the national economy" when taking into account his age, education, and work experience. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also* 20 C.F.R. § 404.1505(a). Disability is determined according to a five-step, sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

> To determine disability, the ALJ follows the familiar five-step process, considering whether: (1) the claimant was employed; (2) she was severely impaired; (3) her impairment was, or was comparable to, a listed impairment; (4) she could perform past relevant work; and if not, (5) whether she could perform any other kind of work.

*Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). In general, the burden of proving the existence of disability lies with the claimant. 20 C.F.R. § 404.1512(a); *Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991).

If "substantial evidence" supports the findings of the Commissioner, then these findings are conclusive. 42 U.S.C. § 405(g). The Court's review of the Commissioner's final decision is deferential because the decision is reviewed "only to ensure that it is supported by substantial evidence in the record as a whole." *Hensley v. Barnhart*, 352 F.3d 353, 355 (8th Cir. 2003). The Court's task is "simply to review the record for legal error and to ensure that the factual findings are supported by substantial evidence." *Id.* This Court must "consider evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Burnside v. Apfel*, 223 F.3d 840, 843 (8th Cir. 2000). A court cannot reweigh the evidence or "reverse the Commissioner's decision merely because substantial evidence would have supported an opposite conclusion or merely because [a court] would have decided the case differently." *Harwood v. Apfel*, 186 F.3d 1039, 1042 (8th Cir. 1999).

### B. The RFC Finding

Plaintiff asserts the ALJ erred in reaching her RFC determination because of how she considered (1) a November 2013 note from Dr. Mickey Syrquin; (2) Plaintiff's cognitive and memory impairments; (3) Plaintiff's hand and upper extremity problems; and (4) Plaintiff's headaches.

4

Prior to Step Four, the ALJ must assess the claimant's RFC, which is the most a claimant can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). It is a "function-by-function assessment of an individual's ability to do work-related activities based upon all of the relevant evidence." *Harris v. Barnhart*, 356 F.3d 926, 929 (8th Cir. 2004). "Medical records, physician observations, and the claimant's subjective statements about his capabilities may be used to support the RFC." *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012). "Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619–620 (8th Cir. 2007); 20 C.F.R. § 404.1546(c). The ALJ is tasked with resolving "conflicts among the various treating and examining physicians." *Bentley v. Shalala*, 52 F.3d 784, 785–87 (8th Cir. 1995). While the ALJ retains the authority to determine the RFC and that decision must be supported by some medical evidence, "the burden of persuasion to prove disability and demonstrate RFC remains on the claimant." *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010).

### 1.     Dr. Syrquin

On November 4, 2013, Dr. Mickey Syrquin saw Plaintiff for a follow-up. (Tr. 440). A CT scan revealed resolution of any blood and intracerebral hemorrhage, subdurals, or epidurals. (Tr. 440). Plaintiff was having some right facial pain, but since he had surgery only several weeks prior, Dr. Syrquin indicated it would get better with time. (Tr. 440). Plaintiff was also having dizziness and occasional headaches, with Dr. Syrquin indicating it was due to a concussion that will also improve with time. (Tr. 440). Dr. Syrquin indicated Plaintiff could return to work on November 18, 2013 with no

restrictions. (Tr. 440). The ALJ considered this evidence, noting: "Although not given great weight because the opinion was provided very early in the process and did not consider other impairments, it does demonstrate there were no ongoing limitations specifically from the head trauma." (Tr. 21).

Plaintiff argues it was error to discount the opinion because it was provided early in his accident recovery process but also rely on it for the assertion that there were no ongoing limitations from the accident. The ALJ did not err when considering Dr. Syrquin's November 2013 notes. As the ALJ described, Dr. Syrquin's notes were relied on to demonstrate no ongoing limitations from head trauma; Plaintiff's dizziness, occasional headaches, and right facial pain were expected to improve with time. Given that the opinion was offered close in time to Plaintiff's accident and only considered head trauma as compared to other bodily ailments, however, the ALJ did not afford great weight to the portion of the opinion indicating Plaintiff could return to work two weeks later with no restrictions whatsoever. As the ALJ noted, an April 18, 2014 CT scan showed "excellent healing" with respect to Plaintiff's head trauma. (Tr. 21, 493). This medical record is consistent with the ALJ's consideration of Dr. Syrquin's opinion that Plaintiff had no ongoing limitations from head trauma. As such, the ALJ did not err in her consideration of Dr. Syrquin's November 2013 opinion.

### 2.     Cognitive and Memory Impairments

The ALJ looked at Plaintiff's memory impairments, noting Plaintiff complained of headaches, facial pain, and short-term memory loss on January 22, 2014, but displayed normal memory, attention, and affect on examination by Dr. Edgardo Crisostomo.

(Tr. 21, 342–43). The ALJ also noted Plaintiff complained of short-term memory problems and difficulties with reading and math on October 3, 2016 to Dr. Kion Hoffman. (Tr. 21). Dr. Hoffman referred Plaintiff for neuropsychological testing. (Tr. 21). On February 23, 2017, Plaintiff saw Dr. Alyssa B. Eidson for a neuropsychological evaluation. (Tr. 711–16). Plaintiff described struggling with forgetfulness and attention, but denied difficulty completing basic activities of daily living. (Tr. 711). It was Dr. Eidson's impression that Plaintiff performed in the impaired range on his neurobehavioral status examination, with errors noted in attention, memory, visuoconstruction, and language. (Tr. 712). Dr. Eidson recommended a more in-depth neuropsychological evaluation to better delineate Plaintiff's current neurocognitive abilities given his impaired performance on screening and his complaints of cognitive dysfunction. (Tr. 712). Dr. Eidson's diagnostic impression was cognitive dysfunction. (Tr. 712). Ultimately, the ALJ concluded that the "late report of cognitive difficulty made to a long-term treating physician does little to support the claims of limitation from his facial fractures, headaches, and subdural bleed. Nonetheless, the complaints are reflected in the residual functional capacity that limits the complexity of work." (Tr. 21).

Plaintiff argues that the ALJ rejected his claims of cognitive and memory impairment in part because his primary care physician did not note Plaintiff's reports of cognitive problems until October 2016. Plaintiff asserts his medical providers did not doubt Plaintiff's complaints and resultant neuropsychological testing in January 2017 showed cognitive deficits. While the ALJ limited Plaintiff to routine and repetitive work, he asserts he has additional deficits that should have been accounted for in the RFC

finding. Defendant argues that Plaintiff misconstrues the ALJ's decision; rather than discount the cognitive impairments because of the late report, the ALJ merely found she could not tie the cognitive impairments to the October 2013 injury.

Plaintiff's argument is not supported by the record. Despite her reservations about tying the memory impairments to Plaintiff's vehicle accident due to the lack of any treatment from 2013 through late 2016, the ALJ limited Plaintiff to an RFC of routine, repetitive simple work. While Plaintiff argues he has additional deficits that should have been accounted for in this RFC, he has failed to point out any such deficits that were not captured by the limitation to routine, repetitive simple work. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant . . . ."). The record showed one report of memory loss on January 22, 2014 and then another report on October 3, 2016. The ALJ did not err in deciding that this lack of treatment rendered it difficult to tie the memory loss to Plaintiff's other ailments. Nevertheless, the ALJ accounted for Plaintiff's ailments by limiting him to routine, repetitive simple work and this decision is supported by substantial evidence in the record as a whole.

### 3.     Hand and Upper Extremity Problems

The ALJ noted Plaintiff's testimony as to severe hand limitations. (Tr. 24). Specifically, Plaintiff testified to neck and shoulder pain that causes numbness in his hands, preventing his ability to hang onto things like a cooking pan or remote control (Tr. 51–52). Plaintiff testified he can button his shirt, use zippers, and drive, but cannot press the buttons on a remote control. (Tr. 52–53). The ALJ further noted that, on August

8

26, 2014,[1] Plaintiff reported right hand pain to Dr. Hoffman that was present since his accident but never evaluated. (Tr. 24, 405). Examination showed only some decreased grip, decreased flexion extension strength of the wrist, and palpable pain over the fourth and fifth rays. (Tr. 24, 405). X-ray imaging showed no acute fractures, preserved joint spaces, and normal alignment. (Tr. 471). The ALJ noted Plaintiff's hands were not evaluated again and determined that the "incidental minimal findings and very late report does not support limitations in the residual functioning capacity." (Tr. 24). The ALJ also looked at Plaintiff's daily activities, noting that Plaintiff's "claims of inability to even use a remote control because of numbness is not consistent with his acknowledgement that he drove to school to pick up his children . . . or with reports that he was able to put on his own Fentanyl patch." (Tr. 24). The ALJ further noted inconsistencies with using a computer, using a remote control, ice fishing, riding four-wheelers, working on a cement slab for a home spa, playing video games with his son, using a wrench, working on his truck, driving, camping, and fishing monthly. (Tr. 24).

Plaintiff challenges the ALJ's rejection of his hand limitations on the grounds of the late report and incidental minimal findings, characterizing the findings as "significant." "A lack of complaints to a treating physician detracts from a claimant's allegations of a disabling impairment." *Reece v. Colvin*, 834 F.3d 904, 909 (8th Cir. 2016) (citing *Fredrickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004)). As the ALJ

---

[1] While the ALJ wrote "August 19, 2016," she cited to Ex. 2F at 57, which corresponds to a medical record from August 26, 2014. This is the same record discussed by the parties in their briefing. This medical record clearly encapsulates the information that the ALJ was referring to. It appears the particular medical record was prepared on August 19, 2014, which explains the August 19 error.

9

noted, the medical record is bereft of any further treatment for Plaintiff's alleged severe hand ailments. Indeed, the medical record shows that it was not even a chief concern of Plaintiff insofar as he only mentioned right-hand pain when leaving his medical appointment, causing the doctor to place an addendum in the medical note. (Tr. 405). More importantly, Plaintiff's daily activities are quite inconsistent with his complaints of hand limitations. *See Wagner v. Astrue*, 499 F.3d 842, 852 (8th Cir. 2007) (testimony not credible where participation in activities of daily living inconsistent with complaints). Thus, substantial evidence supports the ALJ's decision to not credit Plaintiff's testimony regarding his hand limitations where the medical record only shows right-hand pain reported one year after the accident and never again mentioned or treated and shows many daily activities inconsistent with the complaints.

### 4. Headaches

At the hearing, Plaintiff testified to constant headaches that require him to visit the hospital emergency room monthly. (Tr. 46–48). Plaintiff testified that he fell off his porch steps in October 2014 due to losing his balance as a result of his headaches. (Tr. 62). Plaintiff testified that his headaches have worsened over the last two years. (Tr. 62).

The ALJ found that Plaintiff "appears to overstate the severity of his symptoms." (Tr. 21). While testifying that he required monthly hospital visits to treat headaches, the ALJ found that claim unsupported by the treatment record. (Tr. 21) The ALJ noted only two hospital visits: one in May 2015 for headaches that improved with treatment and another in March 2016 related to a cough and vomiting. (Tr. 21). The ALJ indicated that Plaintiff received occipital trigger point injections in November 2013 from Dr. Hoffman

and underwent the neurological evaluation by Dr. Crisostomo in January 2014. (Tr. 21). The ALJ also noted that Dr. Crisostomo prescribed Topamax to treat Plaintiff's headaches and that Plaintiff used that medication through early 2015, suggesting that it was somewhat effective. (Tr. 21). The ALJ concluded that Plaintiff's failure to return to a headache specialist after 2014 is not consistent with his allegations of debilitating headaches. (Tr. 21).

Plaintiff asserts that the ALJ erred in rejecting his headache complaints on the grounds that the Topamax was somewhat effective. Plaintiff points the Court to various instances in the record where he reported headaches—from his May 2015 hospitalization through July 2016. Plaintiff asserts the ALJ did not even consider this history of headaches when making her RFC finding.

The medical record does not support Plaintiff's argument. On May 15, 2015, Plaintiff was admitted to the hospital for diplopia associated with severe headaches. (Tr. 509–25). Plaintiff reported a headache ongoing for five days. (Tr. 523). Plaintiff's headaches improved with oral dilaudid and he was discharged the following day. (Tr. 512). Glasses were recommended. (Tr. 510). Plaintiff saw Dr. Hoffman on May 19, 2015, reporting a return of his headache. (Tr. 530). Dr. Hoffman assessed the cause of Plaintiff's headache as scalp cellulitis and prescribed antibiotics. (Tr. 531). Plaintiff's headache was "significantly decreased" as of May 21, 2015 with medication. (Tr. 532). On June 8, 2015, Plaintiff indicated he still had headaches, but said there was "significant improvement" following medication. (Tr. 533). On July 10, 2015, Plaintiff reported the dilaudid was aiding his headaches. (Tr. 679). On August 10, 2015, Plaintiff indicated the

pain intensity of his headaches improved with lidocaine cream and hydrocodone. (Tr. 677). On February 16, 2016, Plaintiff reported constant headaches after he had not taken his dilaudid for a month. (Tr. 673). Dr. Hoffman prescribed a fentanyl patch. (Tr. 673). On June 6, 2016, Plaintiff reported headache pain after running out of his medication. (Tr. 664). On July 8, 2016, Plaintiff reported a severe migraine following dropping a wrench on his head. (Tr. 658).

While Plaintiff repeatedly complained of headaches to his medical providers, a deeper look at the record shows those headaches to be discrete incidents rather than a persistent malady. Indeed, once Plaintiff received dilaudid and antibiotics in May 2015, he repeatedly reported his headaches had improved so long as he was compliant with medication. "Evidence of effective medication resulting in relief . . . may diminish the credibility of a claimant's complaints." *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005). In fact, the only resurgence in Plaintiff's headaches occurred when he stopped taking his medication as prescribed or when he dropped a wrench on his head. Plaintiff cannot merely point to the points in the medical record where he was noncompliant with his treatment to satisfy his burden of proving disability.

Coupled with the medication noncompliance, Plaintiff's headache testimony was contradicted by the medical record. Plaintiff testified to needing monthly hospital visits to treat worsening headaches. The record contains two hospital visits, and only one of those hospital visits was even related to headache complaints. Moreover, that relevant hospital visit ultimately resulted in medication prescriptions and eyeglasses that alleviated

Plaintiff's ailments so long as he complied with treatment. As such, it was not error for the ALJ to discount Plaintiff's complaints related to headaches.

## IV.   RECOMMENDATION

In sum, the ALJ did not err in making her RFC determination and it is supported by substantial evidence in the record as a whole. The ALJ did not err in considering Dr. Syrquin's November 2013 medical note or rejecting Plaintiff's complaints of hand and upper extremity problems or headaches. Moreover, the ALJ did not err in limited Plaintiff to routine, repetitive simple work as a result of his cognitive and memory impairments based on the treatment record.

Therefore, based upon the record, memoranda, and proceedings herein, and for the reasons stated above, **IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Summary Judgment, (ECF No. 17), be **DENIED**, Defendant's Motion for Summary Judgment, (ECF No. 20), be **GRANTED**, and this matter be **DISMISSED**.

[Signature on next page.]

Date: May 23, 2019                               *s/ Steven E. Rau*
                                                 Steven E. Rau
                                                 United States Magistrate Judge
                                                 District of Minnesota

                                                 *Allen J. v. Colvin*
                                                 Case No. 18-cv-810 (ECT/SER)

## NOTICE

**Filings Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).